IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL  NO. 14-00306-KD |
| FREDERICK MILLER and LAQUINTON MILLER, | : | |
| | : | |
| Defendants. | | |

## ORDER

This cause is back before the undersigned on the motion for reconsideration of the order entered on February 4, 2015 (Doc. 29) wherein Mr. Zachary Dewitt Alsobrook, Esq. was disqualified as counsel for both Frederick Miller and Laquinton Miller.  (Doc. 38, Motion to Reconsider; *see also* Doc. 60, Motion to Supplement Motion to Reconsider.[1])  In addition, the Court has under consideration the brief filed by Ms. Barbara Agricola McCormick, Esq. (Doc. 42-1)[2] and her motion to withdraw (Doc. 51).[3]  Upon consideration of the contents of the briefs filed by Mr. Alsobrook and Ms. McCormick, the evidence presented during the Rule 44(c) hearing, all relevant pleadings in the file, and the evidence presented during the *Garcia* hearing[4] held on

---

[1] Defendant's motion to supplement is **GRANTED**.  The Court will consider the informal ethics opinion dated March 20, 2015.

[2] Although this brief was filed late, the motion to file it out of time (Doc. 42) is **GRANTED**.  The Court chooses to consider the arguments presented by Ms. McCormick.

[3] During the hearing held on March 18, 2015, Ms. McCormick clarified that her motion is a motion to withdraw should the Court determine that her partner is disqualified from representing Frederick Miller.

[4] *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975), *abrogated on other grounds, Flanagan v. United States,* 465 US 259, 263 n. 2, 104 S.Ct. 1051, 1053 n. 2, 79 L.Ed.2d 288 (1984).

March 18, 2015, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(b)(2).

I.   **Relevant Facts**

The relevant facts necessary to resolve the disqualification issue are virtually undisputed.

   **A. Background**

During October 2014, a Captain in the Monroe County Sheriff's Department, along with other agents working as part of a drug task force, set up surveillance of the home owned by Frederick Miller and located at 265 Miller Road, Monroeville, Alabama. The officers observed what appeared to be multiple drug sales from that location made by defendants Frederick Miller and his first cousin, Laquinton Miller. To confirm the agents' suspicions, undercover operations were implemented for the purpose of making drug purchases with marked money. These purchases were made and recorded on video.

A state search warrant was then obtained for the target residence and was executed on October 30, 2014. As a result of the search, the following items were seized by law enforcement officers: more than ten pounds of marijuana, approximately 180 grams of a substance tested to be cocaine, $28,000 in cash,[5] one loaded 9 mm handgun, a loaded single barrel .410 shotgun, a loaded SKS 7.62 assault-type rifle with a bayonet affixed, and scales normally associated with weighing controlled substances.

On October 31, 2014, both Frederick and Laquinton were charged with the state offenses of cocaine trafficking, marijuana trafficking, and participating in felony dog

---

[5] This money was vacuum-sealed and hidden under the mattress in the master bedroom.

2

fighting. These serious charges were submitted to the grand jury in Monroe County, Alabama on December 2, 2014. Both defendants were released on bond; Frederick on December 4, 2014 and Laquinton on December 5, 2014. Those cases remain pending but no indictments have been filed as of the date of this Order.

Federal indictments were returned on December 30, 2014 charging Fredrick with engaging in a conspiracy to possess with the intent to distribute cocaine, crack cocaine and marijuana (Count 1), possession and distribution of crack cocaine, cocaine and marijuana (Counts 2-4), and the possession of a firearm in furtherance of a drug trafficking crime (Count 5). Laquinton was charged as a member of the conspiracy charged in Count 1.[6] They were brought before the Court for an initial appearance on January 22, 2015 without counsel. The Court was informed that Mr. Alsobrook would file an appearance on their behalf once he became a member of the Bar of the Southern District of Alabama. Mr. Alsobrook was admitted on January 26, 2015 and appeared on behalf of both defendants for their arraignments, detention hearings and a hearing held pursuant to Rule 44(c), Federal Rules of Criminal Procedure. Assistant United States Attorney Gregg Bordenkircher represented the United States.

B.  **The January 26, 2015 Rule 44(c) Hearing**

---

[6] Since the Rule 44(c) hearing, a superseding indictment was returned on January 30, 2015 (Doc. 19). The charges against Frederick Miller are now contained in Counts 1-4 and 9. The charges are: conspiracy to possess with intent to distribute cocaine, crack cocaine and marijuana in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute crack cocaine (Count 2), cocaine (Count 3) and marijuana (Count 9) in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime (Count 4). Laquinton is now charged in the conspiracy count and four substantive counts of possessing with the intent to distribute cocaine (Superseding Indictment, Counts 1 & 5-8). Count 1 carries a potential mandatory minimum sentence of 120 months; Counts 2 & 5-8 carry potential mandatory minimum sentences of 60 months; Count 3 carries a potential sentence of 20 years and Count 4 carries a potential mandatory sentence of 60 months consecutive to any sentence imposed on the other charges.

Once notice was received that the same attorney represented the co-defendants, a hearing was scheduled as required by Rule 44, Federal Rules of Criminal Procedure. During the hearing, the Court inquired as to the propriety of the joint representation of the defendants by Mr. Alsobrook.  Mr. Alsobrook responded by admitting that there was a potential for conflicts in this case that could prevent his simultaneous representation of the Millers but did not consider that the potential conflicts had matured to a point that required his withdrawal from representing one or both of his clients.  Mr. Bordenkircher, on the other hand, advised the Court that he believed an actual conflict exists because of the relative involvement of the defendants in the furtherance of the drug-related conspiracy.[7]

Mr. Bordenkircher's portrayal of the participation in the conspiracy of Frederick Miller was that of an organizer/supervisor while Laquinton Miller was portrayed as having a lessor role in the conspiracy, that of a distributer/seller of the controlled substances.  A glaring example of Mr. Bordenkircher's argument was the evidence that the seized drugs and weapons were found in Frederick Miller's home and that he, unlike Laquinton, was videotaped on several occasions surveying the outside of his house while armed with a handgun. Detention Hearing, Government's Exhibit 1.  The evidence against Laquinton Miller, however, is that he lived with his grandmother next door to his older cousin but there is no evidence that he stored controlled substances or weapons in his home.  His participation in the conspiracy is alleged to be that he would obtain drugs for sale from Frederick's home, engage in the sale of the drugs, and then

---

[7] Although the United States did not file a formal motion to disqualify Mr. Alsobrook, Mr. Bordenkircher's arguments during the hearing left no doubt that he was attempting to persuade the Court to do just that.  Accordingly, his presentation during the evidentiary hearing is considered the equivalent of an oral motion that Mr. Alsobrook be disqualified in this action. (*See also* Doc. 55, Response to Motion to Reconsider.)

deliver the proceeds to Frederick after completion of the sales.

In cases such as this, it has been observed that the Government will attempt to offer the opportunity for a reduced sentence to the younger and less culpable defendant in exchange for his testimony against the other members of the conspiracy at trial and, if necessary, at the sentencing hearing. In fact, Mr. Bordenkircher confirmed that there would be an attempt to offer a reduced sentence to Laquinton[8] in exchange for his testimony against the other members of the conspiracy at trial and, if necessary, at the sentencing hearing. If Laquinton is called as a witness, Mr. Alsobrook would have an insurmountable conflict of interest and would not be able to proceed as counsel for either defendant.

The undersigned discussed with both defendants their right to effective assistance of counsel and their right to have independent counsel appointed in an attempt to make sure they were represented by counsel unburdened by any conflicts of interest that might impair his/her ability to provide effective assistance in this serious criminal action. Both defendants responded positively to the Court's questions about whether they understood their rights. They were also provided with information that they could waive the potential conflicts of interest if their decision was made knowingly, intelligently and voluntarily. They orally responded that they wished to waive their right to conflict-free counsel.

The Court's observation of the defendants during these exchanges, coupled with the background information produced during their detention hearings, led to the conclusion that the defendants were not in a position to knowingly and intelligently

---

[8] Frederick Miller is 32 years old, owns his home and lives with his wife and three of his four children. Laquinton Miller, on the other hand, is 24 years old and lives with his grandmother at 299 Miller Road, Monroeville, Alabama. He is single with one child. His one-year-old child lives with its mother in Daphne, Alabama.

understand the consequences of their waivers.  With the concurrence of Mr. Alsobrook, the Court appointed independent counsel for the purpose of giving the defendants an opportunity to gain a better understanding of their rights and the potential consequences should they ultimately decide to waive the potential conflicts of interest and continue with simultaneous representation.  From the Court's Criminal Justice Act Panel, Mr. Sid Harrell was appointed to confer with Frederick Miller and Mr. Dennis Knizley was appointed to confer with Laquinton Miller.

After a review of all the information presented during the hearing, and *in camera* discussions with Messrs. Harrell and Knizley, it was determined that simultaneous representation should not be allowed in this action.  The Court was unable to find from the evidence that there was good cause to believe that no conflict of interest is likely to arise in this action. Rule 44(c)(2).  An order disqualifying Mr. Alsobrook from representing either defendant was entered on February 4, 2015 (Doc. 29).

Subsequent to the Rule 44(c) hearing, on February 4, 2015, Mr. Alsobrook moved to withdraw (Doc. 33) from the representation of Laquinton Miller without giving any details as to why he chose to withdraw from the representation of that defendant.[9]  This motion was deemed moot because the undersigned had disqualified Mr. Alsobrook from representing either defendant earlier in the day. (*Compare* Doc. 34. *with* Doc. 29.)  Because of the early stage of the proceedings and the importance of a decision to disqualify counsel, Frederick Miller was given an opportunity to move for reconsideration of that portion of the Court's decision that would prevent Mr.

---

[9] The explanation contained in the motion for reconsideration (Doc. 38) appears to be that Alsobrook's agreement with Frederick and Laquinton was to maintain his representation of Laquinton Miller only through "his pretrial release from incarceration.  Upon this Court's Order of Conditional Release, [he] then immediately entered a Motion to Withdraw as Attorney of Record for Defendant LaQuinton Miller." (*Id.* at 2.)

Alsobrook from continuing as his lawyer even though he was no longer counsel for Laquinton Miller (Doc. 35).[10] That motion was filed on February 11, 2015 (Doc. 38) and supplemented on March 23, 2015 (Doc. 60).

### C. The March 18, 2015 *Garcia* Hearing

On March 18, 2015, pursuant to the directions contained in *Garcia, supra*, the Court discussed with Mr. Alsobrook, Ms. McCormick, Mr. Sid Harrell, Mr. Dennis Knizley, and the defendants the potential for conflicts of interest that may arise during these criminal proceedings if Mr. Alsobrook were reinstated as counsel for Frederick Miller.  Each defendant was advised of the potential dangers of representation by counsel with a conflict of interest.  They were informed of their right to be represented by conflict-free counsel, whether retained or appointed by the Court.[11]  Again, each defendant, when questioned by the Court, responded that he understood that he had a right to obtain the services of conflict-free counsel, retained or appointed, and that there were serious potential conflicts of interest that could arise if Mr. Alsobrook were reinstated to represent Frederick Miller. Each was given an opportunity to ask the Court any questions but the defendants indicated they did not have questions.  Each defendant was asked individually if he understood the possible conflicts and the consequences of proceeding in this action should Mr. Alsobrook remain in the case as counsel for Frederick Miller.  They responded that they had discussed these issues with

---

[10] "Nonetheless, whereas Attorney Alsobrook has withdrawn from the representation of LaQuinton Miller, the issue is only whether there is a Conflict in Attorney Alsobrook representing Defendant Fredrick Miller due to his previous representation in State Court of Co-Defendant LaQuinton Miller." (Doc. 38, at 3.)

[11] It should also be noted that this hearing was held after independent counsel had been appointed and the defendants had been given an opportunity to thoroughly discuss their legal options with Mr. Harrell and Mr. Knizley.

Mr. Alsobrook and independent counsel. Based on what they knew and understood about the potential conflicts of interest, they were both willing to voluntarily waive their Sixth Amendment right to conflict-free counsel.[12] Mr. Alsobrook added that he had no reason to believe that he needed to withdraw from the representation of Frederick Miller because he had not gained any information from Laquinton Miller that could be used to the advantage of his current client or to the disadvantage of his former client. He acknowledged, however, that conflicts of interest were a real possibility in this case as it progressed and if circumstances should change to the point that the interests of Frederick and Laquinton became adverse, or Laquinton was called to testify on behalf of the United States, he would be required to withdraw from Frederick Miller's case.

II.     Analysis.

"The right to select counsel of one's choice ... has been regarded as the root meaning of the [Sixth Amendment's] constitutional guarantee." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 147-148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006) (citations omitted). "[A]n essential part of that right is the accused's ability to select the counsel of his choice." *United States v. Ross,* 33 F.3d 1507, 1522 (11th Cir. 1994) (citation omitted), *cert. denied,* 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995). "Thus, a criminal defendant has a presumptive right to counsel of choice[.]" *Id.* (citation omitted)

While the Sixth Amendment contains a "presumption in favor of counsel of choice[]" for those defendants who have the means to retain counsel, *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1697-1698, 100 L.Ed.2d 140 (1988); *see also id.* at

---

[12] Their waivers were oral waivers and have not been followed by written waivers. They did not articulate in detail the reason for waiving their rights but simply responded to the Court's questions.

159, 108 S.Ct. at 1697 (recognizing that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment"), "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id*. (citations omitted).  "Thus, a defendant's right to the counsel of his choice is not absolute." *United States v. Campbell,* 491 F.3d 1306, 1310 (11th Cir. 2007) (citations omitted).

"In determining whether or not to disqualify defense counsel, the court must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest." *United States v Ross*, 33 F.3d at 1523, *citing Wheat*, 486 U.S. at 160, 108 S.Ct. at 1697. "The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial." *Id.* (citation omitted). Even in those cases where the defendant is willing to waive a conflict of interest, the United States Supreme Court made clear in *Wheat* that "where a court justifiably finds an actual conflict of interest, *there can be no doubt that it may decline a proffer of waiver ....*" 486 U.S. at 162, 108 S.Ct. at 1698 (emphasis added). In addition, it is clear that where one member of a firm has an actual conflict of interest, that conflict is imputed to all attorneys in the firm. *Campbell*, 491 F.3d at 1311, *citing Ross,* 33 F.3d at 1523.

> In deciding whether the actual or potential conflict warrants disqualification, we examine whether the subject matter of the first representation is substantially related to that of the second.  Our goal is to discover whether the defense lawyer has divided loyalties that prevent him from effectively representing the defendant.  If the conflict *could* cause the defense attorney improperly to use privileged communications in

>cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict *could* deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest. In short, *the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.*

*Ross*, 33 F.3d at 1323 (emphasis supplied; internal citations omitted); *see also Campbell*, 491 F.3d at 1311 (quoting *Ross*).

In this case, Fredrick Miller is asking the Court to allow Mr. Alsobrook to continue as his attorney after withdrawing from the representation of his co-defendant, Laquinton Miller.  It is clear that the representation of Frederick Miller would be intimately related to the representation of his former client in the same criminal action. Under these circumstances, it is irrebuttably presumed that Mr. Alsobrook received relevant confidential information from Laquinton Miller, regardless of his comments to the contrary.  *United States v. Henry*, 307 Fed.Appx 331, 334-335 (11th Cir.) ("'The rule of law in this circuit is (and will continue to be) that once the former client … proves that the subject matters of the present and prior representations are "substantially related," the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation.'" (*quoting Freund v. Butterworth,* 165 F.3d 839, 859 (11th Cir. 1999)), *cert. denied,* 556 U.S. 1203, 129 S.Ct. 2037, 173 L.Ed.2d 1123 (2009).  Mr. Alsobrook could not effectively use the information obtained from his former client, either on cross-examination of Laquinton Miller or to support any defense that Frederick Miller may wish to present.  Thus, an actual conflict of interest exists that justifies the disqualification of Mr. Alsobrook. *Henry, supra,* 307 Fed.Appx. at 334 ("We have held that an attorney's actual or potential conflict of interest overcomes the presumption in favor of a defendant's counsel of choice and warrants

disqualification.").

Both defendants have provided the Court with oral consents confirming their agreement to allow Mr. Alsobrook to remain in the case as counsel for Frederick Miller, regardless of any duty of loyalty owed by Mr. Alsobrook or the possibility that his effectiveness as counsel would be compromised. Laquinton Miller is waiving his right to loyalty from his former attorney and Frederick Miller his Sixth Amendment right to effective assistance of counsel. This Court is not required to accept these waivers, however. *Ross*, 33 F.3d at 1524; *see also Henry*, 307 Fed.Appx. at 335. The Court must always be in a position to reject these types of waivers in order to ensure the adequacy of representation, protect the integrity of the proceedings, and to protect against future attacks over the adequacy of a waiver and the ultimate fairness of the trial. *Wheat*, 486 U.S. at 162-163, 108 S.Ct. at 1698-1699.

### III. Conclusion

Mr. Alsobrook formerly represented both defendants in this very action and continues to represent both defendants on charges pending against them in state court arising, in part, from the same facts that form the basis for this federal action. He is presumed to have relevant information obtained through his representation of Laquinton Miller that he would not be able to use to the benefit of Frederick Miller. This conflict of interest unquestionably impairs his ability to comply with his ethical responsibility to Laquinton Miller, while providing Frederick Miller with effective assistance of counsel. Accordingly, the motion for reconsideration filed on behalf of Frederick Miller is DENIED and the waivers presented by Laquinton and Frederick Miller are REJECTED. Mr. Alsobrook is disqualified from representing Frederick Miller in this criminal action. Further, the motion to withdraw filed by Ms. McCormick is

GRANTED since she, as Mr. Alsobrook's partner, is subject to the same disqualification.

**DONE** and **ORDERED** this the 30th day of March, 2015.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**